IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

THOMAS M SMITH,

                Plaintiff,

v.

P.A. GERST, and
WARDEN CROW,

                Defendants.

Case No. 26-cv-00249-SPM

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Thomas Smith, an inmate of the Illinois Department of Corrections (IDOC) who is currently incarcerated at Big Muddy River Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. The First Amended Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

### THE FIRST AMENDED COMPLAINT

Plaintiff alleges the following: On January 14, 2026, while moving his property box, Plaintiff caught his thumb between the bunk bed and the box, "snapping [his] thumb." (Doc. 10, p. 2). His thumb immediately began to swell, and the tip turned purple. Plaintiff felt a "numb tingling" sensation consistent with the feeling of losing circulation. His thumb was visibly dislocated. Plaintiff notified Correctional Officer Brubaker, the wing officer, and asked to be sent

Page 1 of 8

to "medical." Brubaker told Plaintiff that Plaintiff would be fine and did not attempt to obtain medical attention for Plaintiff's injury. (*Id.*).

For the next two days, Plaintiff continued to show the "medline" nurse his injury, but the nurse did not even bother to look at his thumb and told Plaintiff to submit a "sick call" request. (Doc. 10, p. 2). On January 15, 2026, Plaintiff submitted a sick call slip. (*Id.* at p. 3).

On January 17, 2026, Plaintiff showed his injury to Correctional Officers Casey and Dean. (Doc. 10, p. 3). The correctional officers were shocked by the state of his thumb and called the health care department about Plaintiff's injury. Plaintiff was then seen by a nurse. The nurse performed a thorough exam and told Plaintiff that without an x-ray she could not tell if his thumb was broken. She gave Plaintiff ibuprofen and Tylenol, but the medicine did not help his pain. (*Id.*).

On January 20, 2026, Plaintiff had an appointment with Physician Assistant Gerst. (Doc. 10, p. 3). During the appointment, Gerst was rude, and his back was to Plaintiff for "90% of the appointment." (*Id.* at p. 4). Gerst grabbed Plaintiff's thumb and tried to bend the thumb too far causing pain. Plaintiff jerked and cried out in pain, but Gerst told him to "stop acting like a fool." Gerst ordered x-rays and gave Plaintiff ibuprofen, but Gerst did not splint the thumb. X-rays of Plaintiff's thumb were taken on January 26, 2026. The following day, Plaintiff submitted a sick call slip because of the pain and an ongoing tingling sensation in the tip of his thumb. Plaintiff was seen at sick call on January 29, 2026, and only given more ibuprofen, even though it was not effective at treating his pain. (*Id.*).

Plaintiff requested another sick call appointment on February 10, 2026. (Doc. 10, p. 4). Plaintiff's thumb was still swollen, and he had limited range of motion. Plaintiff was seen on February 12, 2026, and he told the nurse that he had not been seen by the doctor about his x-ray results. The nurse was surprised and made a note to have Plaintiff seen by a doctor. (*Id.*). Plaintiff submitted a sick call slip on February 17, 2026, because of his pain, loss of feeling, and limited

range of motion. (*Id.* at p. 5).

Plaintiff had an appointment with Gerst on February 27, 2026, to review the x-ray results. (Doc. 10, p. 5). Plaintiff explained to Gerst his ongoing symptoms, specifically a "pins and needles" sensation in the tip of his thumb, pain in the knuckle closest to the thumbnail, and limited range of motion. Gerst explained that the x-ray results were normal and did not order further testing, despite the obvious deformity of Plaintiff's thumb, ongoing pain, and tingling sensation. Gerst told Plaintiff that if his thumb did not improve in a month or two then Gerst could order physical therapy. Gerst remarked that ordering physical therapy "would be pointless since the physical therapist is about eight months behind schedule." (*Id.*).

Plaintiff submitted a sick call slip on March 8, 2026, and was seen by a nurse on March 11, 2026. (Doc. 10, p. 5). Plaintiff had an appointment with Gerst on March 17, 2026. During the appointment, Plaintiff against explained that he was still experiencing pain, a "pins and needles sensation," limited range of motion, and a tight feeling like a "rubber band was going to snap in [his] thumb." Gerst did not look at Plaintiff and instead again read the x-ray results. (*Id.*). Gerst told Plaintiff that if his thumb was not better in a month, then Plaintiff should write to the medical director. (*Id.* at p. 5-6).

Plaintiff submitted a sick call slip and was seen by a nurse on March 22, 2026. (Doc. 10, p. 6). The nurse informed Plaintiff that she was going to refer Plaintiff to be seen by a medical provider again. Plaintiff asked if he could be seen by the doctor, rather than by Gerst. The nurse told Plaintiff that she would try but that Plaintiff would probably have to see Gerst a few more times before seeing the doctor. As of filing the First Amended Complaint, signed April 1, 2026, Plaintiff has still not seen a provider and has again submitted a sick call slip. (*Id.*).

## DISCUSSION

Based on Plaintiff's allegations and his articulation of his claims, the Court designates the

following count:

> **Count 1:**    Eighth Amendment claim against Gerst and Warden Crow for deliberate indifference to Plaintiff's thumb injury and associated pain.

The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the First Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

### Count 1

To state a claim for deliberate indifference, an inmate must put forward facts implicating both an "objective and subjective element, namely that: (1) an objectively serious medical need was deprived; and (2) the official knew that the risk of injury was substantial but nevertheless failed to take reasonable measures to prevent it." *See Chapman v. Keltner*, 241 F.3d 842, 845 (citing *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999)). The "receipt of some medical care does not automatically defeat a claim of deliberate indifference." *Edwards v. Snyder,* 478 F. 3d 827, 831 (7th Cir. 2007). A medical professional's actions may reflect deliberate indifference if he "chooses an easier and less efficacious treatment without exercising professional judgment or simply continues with a course of treatment that he knows is ineffective in treating the inmate's condition." *Arnett v. Webster,* 658 F.3d 742, 754 (7th Cir. 2011).

Plaintiff has sufficiently stated a claim against Gerst. According to Plaintiff, he has been seen by Gerst at least three times, and Gerst has failed to provide any meaningful treatment for his thumb injury and pain. Count 1 will proceed against Gerst.

Count 1 is dismissed as to Warden Crow. Although Crow is listed as a defendant, there are

---

[1] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

no allegations against her in the body of the Complaint. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption.").

**MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

Plaintiff has filed a second motion seeking a temporary restraining order (TRO) and/or a preliminary injunction. (Doc. 11). Plaintiff asserts that his thumb is clearly damaged, and he continues to experience severe pain, pins and needles sensation, and very limited range of motion. Plaintiff asks the Court to issue an order directing that he be seen by an orthopedic doctor so that he can be properly diagnosed and treated and that he be prescribed proper pain medication. He states that he will suffer long term permanent damage unless an emergency injunction is issued.

There are significant differences between a TRO and a preliminary injunction. A TRO can be issued without notice to the party to be enjoined, but it may last no more than fourteen days. FED. R. CIV. P. 65(b)(2). Further, a TRO may be issued without notice only if "specific facts in an affidavit or a verified complaint clearly show that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." FED. R. CIV. P. 65(b)(1)(A). Such injunctive relief is warranted "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan,* 511 U.S. 825, 845 (1994).

Without expressing any opinion on the merits of any of Plaintiff's other claims for relief, the Court concludes that a TRO should not be issued in this matter. The Prison Litigation Reform Act requires that any grant of prospective relief, including TROs, "shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs" and cannot issue "unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626. Federal courts must exercise equitable

restraint when asked to take over the administration of a prison, something that is best left to correctional officials and their staff. *See Sandin v. Conner,* 515 U.S. 472, 482 (1995); *Rizzo v. Goode,* 423 U.S. 362, 379 (1976). Plaintiff continues to be regularly seen by nurses, and his disagreement with Gerst's decision to wait another month before taking further action and to not prescribe him stronger pain medication is not sufficient demonstrated that "irreparable injury, loss, or damage will result…before the adverse party can be heard in opposition." FED. R. CIV. P. 65(b)(1)(A). Accordingly, the Court will not order that he be sent to a specialist and prescribed stronger pain medication without allowing Defendants to first respond to the motion. The request for a TRO is **DENIED**.

Plaintiff's request for a preliminary injunction, however, will remain pending until Defendants have been served. Defendants are directed to respond to the request for a preliminary injunction within **14 days** of service of the pleadings in this case, at which point the Court will determine the need for a hearing on the motion requesting a preliminary injunction. In their responses, Defendants shall provide information on Plaintiff's current diagnosis and the status of his medical care.

### DISPOSITION

For the reasons set forth above, the First Amended Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** will proceed against Gerst and is **DISMISSED without prejudice** as to Warden Crow. Crow shall remain a defendant in her official capacity only for the purpose of implementing any preliminary injunctive relief that may be ordered.

Because Plaintiff claims involve his medical care, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court **SHALL** prepare for Defendants Gerst and Crow (official capacity

only) the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint, and this Memorandum and Order to the defendants' place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to file an appropriate responsive pleading to the First Amended Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Local Rule 8.2(b), Defendants need only to respond to the issues stated in this Merit Review Order.**

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and (if applicable) his or her attorney were deemed to have entered into a stipulation that any unpaid costs taxed against the applicant shall be paid from any recovery secured in this action.

Finally, Plaintiff is further **ADVISED** that he is under a continuing obligation to keep

the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: April 21, 2026**

　*s/Stephen P. McGlynn*　　　　
**STEPHEN P. MCGLYNN**
**United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.