# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

THOMAS M. SMITH,

        **Plaintiff,**

v.

P.A. GERST, and
WARDEN CROW,

        **Defendants.**

**Case No. 26-cv-00249-SPM**

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on a Motion for Preliminary Injunction filed by Plaintiff. (Doc. 11). For the following reasons, the motion will be denied.

### BACKGROUND

Plaintiff Thomas Smith, an inmate of the Illinois Department of Corrections, commenced this civil action on March 4, 2026, pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. In the First Amended Complaint, Plaintiff alleges that he dislocated his thumb on January 14, 2026, when he was moving a box containing his property and his hand became caught between his bunk bed and the box. (Doc. 10, p. 2). Since his injury, Plaintiff asserts that he has not received meaningful medical care. Plaintiff states that he first submitted a sick call slip requesting a medical appointment the day after the injury, on January 15, 2026. (*Id.* at p. 3). On January 17, 2026, after two correctional officers saw his injured thumb and called the health care department, he was seen by a nurse. The nurse examined Plaintiff and gave him ibuprofen and Tylenol, but the medicine did not help his pain. (*Id.*).

Plaintiff states that he first saw Defendant Physician Assistant Gerst on January 20, 2026,

Page 1 of 6

and during this appointment, Gerst was rude, painfully jerked Plaintiff's thumb, and did not splint Plaintiff's thumb. (Doc. 10, p. 3-4). Gerst ordered x-rays and gave Plaintiff ibuprofen. (*Id.* at p. 4). X-rays of Plaintiff's thumb were taken on January 26, 2026. (*Id.*). The following day, January 27, 2026, Plaintiff asserts that he submitted another sick call slip because he continued to experience pain and a tingling sensation in the tip of this thumb. Plaintiff was seen at sick call on January 29, 2026, and given more ibuprofen. Plaintiff asserts that the ibuprofen continued to be ineffective in treating his pain. (*Id.*).

Plaintiff alleges that he submitted another sick call slip on February 10, 2026, and was seen by a nurse on February 12, 2026. (Doc. 10, p. 4). He states that at this time, his thumb was still swollen, and he had limited range of motion. The nurse noted that Plaintiff still needed to see a doctor following his x-rays. (*Id.*). Plaintiff submitted a sick call slip on February 17, 2026, because of his ongoing pain, loss of feeling, and limited range of motion. (*Id.* at p. 5).

Plaintiff had a second appointment with Gerst on February 27, 2026, to review the x-ray results. (Doc. 10, p. 5). Plaintiff states that during this appointment Gerst explained that the x-ray results were normal. Gerst did not order any further testing, despite Plaintiff's "obnoxious deformity" and ongoing symptoms – pain and tingling sensation. (*Id.*).

Plaintiff submitted a sick call slip on March 8, 2026, and was seen by a nurse on March 11, 2026. (Doc. 10, p. 5). He had his third appointment with Gerst on March 17, 2026. At the appointment, Plaintiff states that he explained that he was still experiencing pain, a "pins and needles sensation," limited range of motion, and a tight feeling like a "rubber band was going to snap in [his] thumb." Plaintiff alleges that Gerst did not examine him and only reviewed the x-ray results again. (*Id.*). Gerst told Plaintiff that if his thumb was not better in a month, then Plaintiff should write to the medical director. (*Id.* at p. 5-6).

Plaintiff submitted a sick call slip and was seen by a nurse on March 22, 2026. (Doc. 10,

p. 6). The nurse informed Plaintiff that she was going to refer Plaintiff for another appointment with a medical provider. Plaintiff asked if he could be seen by the doctor, rather than by Gerst. The nurse told Plaintiff that she would try but that Plaintiff would probably have to see Gerst a few more times before seeing the doctor. As of filing the First Amended Complaint, signed April 1, 2026, Plaintiff asserts that he has again submitted a sick call slip, and he still has not seen a provider. (*Id.*).

Pursuant to 28 U.S.C. §1915A the Court conducted a merit review of the First Amended Complaint. In the merit review order, the Court designated a single surviving claim in this case - an Eighth Amendment claim against Gerst for deliberate indifference to Plaintiff's thumb injury and associated pain. (Doc. 12). The Court also addressed Plaintiff's second Motion for a Temporary Restraining Order (TRO) and/or Preliminary Injunction. (*See* Doc. 11). The Court denied the request for a TRO but ordered Defendants Gerst and Warden Crow to respond to the request for a preliminary injunction. The request has now been fully briefed (*see* Doc. 20, 24, 25, 26, 27).

### MOTION FOR PRELIMINARY INJUNCTION

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). In order to obtain a preliminary injunction, the plaintiff has the burden of demonstrating:

- a reasonable likelihood of success on the merits;
- no adequate remedy at law; and
- irreparable harm absent the injunction.

Page 3 of 6

*Planned Parenthood v. Comm'r of Ind. State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012). All three requirements must be satisfied before the Court can consider whether preliminary injunctive relief is warranted. Here, Plaintiff has failed to meet the requirements for the issuance of a preliminary injunction, notably, a likelihood of success on the merits and irreparable harm, and so, his motion must be denied.

According to the medical records, Plaintiff was seen by Dr. Dennis Larson at Big Muddy River Correctional Center (Big Muddy) on April 22, 2026, for complaints of pain in his left thumb. (Doc. 24, p. 2). Dr. Larson referred Plaintiff to a specialist. (Doc. 24-1, p. 12). Plaintiff was seen by Dr. Mourad, an orthopedic surgeon, on June 5, 2026. (*Id.* at p. 13). Dr. Mourad indicated in the medical records that Plaintiff has a healed left thumb interphalangeal joint dislocation, and under recommendations and plans, Dr. Mourad wrote, "nothing." (*Id.*). Defendants argue that based on these records Plaintiff has received ongoing care, and he will not suffer irreparable harm if an injunction is not granted. (Doc. 24, p. 2; Doc. 27, p. 5).

Plaintiff argues that Defendants have provided the Court with misleading information. (Doc. 25, p. 2). He contends that although it is true that Dr. Mourad recorded "nothing" regarding further treatment plans, Dr. Mourad was under the impression that he was treating Plaintiff for a recent bone break. According to Plaintiff, he informed Dr. Mourad that he was supposed to be receiving treatment for "possible ligament and/or nerve damage." (*Id.*). Dr. Mourad told Plaintiff that he could not see if there was ligament or nerve damage based on the x-ray results and that he would need an MRI and possibly a CT scan to assess for ligament and nerve damage. (*Id.* at p. 1, 2; Doc. 26, p. 2). Plaintiff asserts that Dr. Mourad told him that he would need to be referred again so that Dr. Mourad could schedule those scans before deciding on any further treatment. (Doc. 25, p. 2; Doc. 26, p. 3). Plaintiff states that when he returned to Big Muddy, he saw a nurse practitioner.

(Doc. 26, p. 2). The nurse practitioner told him that she could not read the note written by Dr. Mourad and that she would request the full dictated note. Once she received the full dictated note, she would have him return for an appointment to review the results. (*Id.* at p. 2-3). Plaintiff states he has submitted a request to the health care unit, but he has not been called back for a follow-up appointment with the nurse practitioner. (*Id.* at p. 3). He also submitted a sick call slip, but he has not been scheduled to be seen at nurse sick call. Plaintiff contends that he continues to suffer from thumb pain, a pins and needles sensation, and tightness in his thumb. Because Defendants have not provided treatment at all, he argues that he will suffer irreparable harm if the Court does not intervene. (*Id.*).

First, Plaintiff again has not shown a likelihood of success on the merits of his claim against Gerst. As this Court previously observed, all Plaintiff has done is establish that he disagrees and is unhappy with the care Gerst provided. (*See* Doc. 5, p. 4) (citing *Proctor v. Sood*, 863 F.3d 563, 568 (7th Cir. 2017)). Plaintiff believes that Gerst should have ordered further diagnostic testing, but there is nothing in the record indicating how Plaintiff plans to demonstrate that Gerst's decision to treat him with ibuprofen and to allow his "thumb to heal on its own, based on 'normal' x-ray results, departed from accepted medical judgment, practice, or standards" for a dislocated thumb. (*Id.* at p. 5). For the purposes of a preliminary injunction, the Court does not accept Plaintiff's allegations in the First Amended Complaint "as true, nor do[es] [it] give [Plaintiff] the benefit of all reasonable inferences in his favor." *Doe v. Univ. of S. Indiana,* 43 F.4th 784, 791 (7th Cir. 2022). Other than the facts as stated in the First Amended Complaint and the Motion for Preliminary Injunction, Plaintiff has not offered any evidence to substantiate his claim that Gerst treated him with deliberate indifference, in other words, that no minimally competent professional would have responded as Gerst did to Plaintiff's injury. *See Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019). Therefore, he has not demonstrated a likelihood of success

on the merits of his claim against Gerst.

Second, Plaintiff has not shown that he is likely to suffer irreparable injury without the Court's involvement. In the Motion, Plaintiff seeks a court order directing that he be sent to an "orthopedic doctor to be properly diagnosed and treated, and [directing] Defendants to prescribe proper pain medication." (Doc. 11, p. 3). Plaintiff has been seen by an orthopedic surgeon as requested; however, he is still unhappy with his care. Although Plaintiff asserts that Dr. Mourad told him that further referrals and testing would be needed in order to assess if he had in fact damaged his ligaments or nerves, Dr. Mourad did not provide any recommendations for further treatment, including pain medication, in the medical record. (Doc. 24-1, p. 13). There may be more information in Dr. Mourad's dictated note about future treatment options for possible nerve or ligament damage, but even so, there is no evidence that Dr. Mourad considered this expedient and that Plaintiff is likely to suffer irreparable injury absent immediate action. (*See* Doc. 11, p. 3).

Because Plaintiff has failed to show a likelihood of success on the merits of his Eighth Amendment claim against Gerst and that irreparable harm will occur without Court intervention, he has not made a clear showing that a preliminary injunction is warranted. The Motion for a Preliminary Injunction is **DENIED**. (Doc. 11).

**IT IS SO ORDERED.**

**DATED: August 5, 2026**

**STEPHEN P. MCGLYNN**
**United States District Judge**